## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANNA MELTZER-MARCUS, )<br><br>    Plaintiff, )<br><br>v. )<br><br> )<br>HITACHI CONSULTING, f/k/a Experio Solutions)<br>Corp., a Delaware corporation; UNUM )<br>PROVIDENT CORP., a Delaware corporation; )<br>and UNUM LIFE INSURANCE COMPANY OF )<br>AMERICA, a Maine corporation )<br> )<br>    Defendants. ) | No. 03 C 7687<br><br>Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION & ORDER

Plaintiff Anna Meltzer-Marcus sued defendants Unum Provident Corporation and Unum

Life Insurance Company of America (collectively, "Unum") as well as Hitachi Consulting,

alleging violations of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1132 *et seq.* Meltzer-Marcus is the widow of Mark Meltzer, who was an employee of

Hitachi Consulting, formerly known as Experio Solutions Corporation ("Experio"). As an

employee of Experio, Meltzer was eligible for group life insurance coverage under a policy

issued by Unum Life Insurance Company of America ("Unum Life"), which is governed by

ERISA. According to Meltzer-Marcus, both Hitachi Consulting and Unum violated ERISA by

failing to pay life insurance benefits owed to her as the beneficiary of her husband's life

insurance policy. The parties have consented to the jurisdiction of the United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c). This matter is now before the court on Unum's motion for

summary judgment and Meltzer-Marcus's cross-motion for summary judgment.[1]  In addition to bringing a claim under § 1132(a)(1)(B) to recover benefits due to her under her husband's life insurance policy (raised in Count III of the Complaint), Meltzer-Marcus also brought a claim for breach of fiduciary duty seeking equitable relief under § 1132(a)(3) (raised in Count IV of the Complaint).  For the reasons explained below, the court grants summary judgment in favor of Unum and against Meltzer-Marcus on both claims.

## I.    FACTS[2]

From November 27, 2000 until his death on December 27, 2001, Mark Meltzer worked as a consultant for Experio, receiving an annual base salary of $110,000.  (Pl.'s Resp. Defs.' L.R. 56.1 Statement of Undisputed Facts (Pl.'s Resp. DSUF") at ¶¶ 2, 15.)  During his employment with Experio, Meltzer participated in the group life insurance coverage that Experio offered its employees under the Select Group Insurance Trust–Policy No. 292000, an insurance policy issued by Unum Life (the "Group Policy").  (*See id.* at ¶¶ 3-4.)[3]  Experio is the plan sponsor and plan administrator of the Group Policy.  (*Id.* at ¶ 6; Admin. R. at UACL000141.)  Under the terms of the policy, Experio acts on its own behalf or as agent for its employees, but not, under any circumstances, as agent of Unum.  (Pl.'s Resp. DSUF at ¶ 45; Admin. R. at UACL000141.)

Under the Group Policy, an Experio employee is automatically entitled to a basic life insurance benefit equal to the employee's annual earnings (to a maximum of $500,000).  (Admin.

---

[1]Meltzer-Marcus and Hitachi Consulting have settled.

[2]All facts are undisputed unless otherwise noted.

[3]A copy of the Group Policy is included in the Administrative Record (which is Exhibit A in Defendants' Appendix) at UACL00166-00115.

R. at UACL00172.) The basic life insurance benefit is provided by Experio at no expense to the employee. The employee may also purchase additional, supplemental life insurance up to four times his annual earnings. (*Id.*) The Group Policy provides that: "EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF [THE EMPLOYEE'S] INSURANCE (BASIC AND ADDITIONAL BENEFITS COMBINED) OVER: $500,000 or over 3 x annual earnings." (Pl.'s Resp. DSUF at ¶ 30.)[4] Evidence of insurability, according to the Group Policy, "means a statement of [the employee's] medical history which UNUM will used to determine if [the employee] is approved for coverage." (*Id.* at ¶ 32.) The Group Policy provides that an insured's application for increased coverage does not become effective until "the date Unum approves [the applicant's] evidence of insurability form, if evidence of insurability is required." (Admin. R. at UACL00147.)

In addition to statements in the Group Policy itself, Experio provided its employees with information about plan enrollment requirements—including the evidence of insurability requirement—through several means. Copies of the Summary Plan Description[5] regarding the Group Policy for 2001 and information about plan enrollment were available to Experio

---

[4]In response to DSUF ¶ 30 (and several other facts regarding the language of the Group Policy), Meltzer-Marcus responded that she agreed that the Group Policy included certain specified language, but added that she "does not agree with the conclusory statement therein." The obvious purpose of DSUF ¶ 30 (and other similar facts) was to establish the language of the Group Policy. Accordingly, the relevant issue is whether Meltzer-Marcus agrees that the Group Policy says what it says—which she does. DSUF ¶ 30 (and other similar facts regarding the language of the Group Policy) are admitted.

[5]A copy of the Summary Plan Description (fully titled "Experio Solutions Corporation Summary Plan Description for the Life Insurance, Accidental Death and Dismemberment, and Group Legal Expense Options, revised July 1, 2001") is attached as Exhibit D to plaintiff's complaint; plaintiff's complaint is Exhibit B in Defendants' Appendix. (Pl.'s Resp. DSUF at ¶ 8.)

3

employees via the company's intranet site.[6] (Pl.'s Resp. DSUF at ¶¶ 9, 36, 39.) The Summary

Plan Description discusses the evidence of insurability requirement, and states that where such

evidence is required, life insurance coverage does not begin until the evidence of insurability

form has been approved. (Pl.'s Resp. at ¶ 39; SPD at 5.) Experio employees, including Meltzer,

also received the Benefits Highlights and Enrollment Guide 2001, which states that employees

are required to submit evidence of insurability to qualify for coverage that exceeds three times

base salary or coverage that exceeds $500,000. (Pl.'s Resp. DSUF at ¶¶ 36-37, 42.)[7] As stated in

the Group Policy, "An evidence of insurability form can be obtained from your Employer." (*Id.*

at ¶ 31.)

On or about December 10, 2000, during the annual enrollment period, Mark Meltzer

filled out the 2001 Benefit Enrollment Form.[8] (*Id.* at ¶ 34.) On his Benefit Enrollment Form,

Meltzer elected to purchase supplemental life insurance coverage equal to four times his annual

salary, (Admin. R. at UACL00013), so that his total life insurance coverage (basic and

supplemental combined) would total five times his annual salary. Both Meltzer and his wife

knew that proof of insurability was required in order for Meltzer to qualify for the amount of

supplemental life insurance that he selected. (Pl.'s Resp. DSUF at ¶ 41.) Meltzer, however,

---

[6]Inexplicably, plaintiff admitted this fact in response to DSUF ¶ 39, but stated she could neither agree with nor dispute the same fact in response to DSUF ¶ 9. DSUF ¶ 9 is deemed admitted, both because the same fact was admitted in ¶ 39 and because a response that plaintiff can neither agree with nor dispute a fact is insufficient to create a disputed issue of fact. *See* N.D. Ill. L. R. 56.1(b)(3).

[7]Plaintiff stated she could neither agree nor disagree with certain aspects of DSUF ¶¶ 36-37, and that she disagreed with the conclusory statements in those paragraphs. Such responses are not sufficient to create a disputed issue of material fact under Local Rule 56.1. N.D. Ill. L.R. 56.1(b)(3). Paragraphs 36 and 37 are deemed admitted.

[8]A true and accurate copy of Meltzer's enrollment form is attached as Exhibit B to plaintiff's complaint, and in the Administrative Record at UACL00014-00012. (Pl.'s Resp. DSUF at ¶ 34.)

4

never submitted evidence of insurability. (*Id.* at ¶¶ 40, 49.)[9]

Meltzer-Marcus faults Unum for her husband's failure to submit evidence of insurability. According to Meltzer-Marcus, it was Unum's responsibility to provide her husband with any necessary forms, including the evidence of insurability form, and her husband was never given an evidence of insurability form to submit. Unum disputes Meltzer-Marcus' position, pointing to the language of the Group Policy which states that "An evidence of insurability form can be obtained from your Employer." (*Id.* at ¶ 31.) This issue, and any related facts, is addressed further below.

At no time after completing his Benefit Enrollment Form did Meltzer or his wife receive any documentation from Unum approving his selection of $440,000 in supplemental life insurance. (*Id.* at ¶ 51.) Nor did the they receive documents from Unum approving Meltzer's evidence of insurability, since he never submitted such evidence. (*Id.* at ¶¶ 49-50.)

Because Meltzer never submitted evidence of insurability demonstrating that he qualified for life insurance coverage exceeding $330,000 (three times his annual earnings), the premium that Unum billed Experio for Meltzer's life insurance was based on basic and supplemental life

---

[9]In response to DSUF ¶ 40, Meltzer-Marcus answered that she partially agreed and partially disagreed. (Pl.'s Resp. DSUF ¶ 40.) Local Rule 56.1(b)(3) requires that if the opposing party contests any fact set forth by movant, "the opposing party must expressly state its disagreement and include 'specific references to the affidavits, parts of the record, and other supporting materials' that establish the basis for the disagreement." *Gilbert v. American Airlines, Inc.*, No. 01 C 3088, 2004 WL 783362, at *1 (N.D. Ill. Jan. 7, 2004) (quoting N.D. Ill. L.R. 56.1(b)(3)). Because Meltzer-Marcus failed to cite the basis for her disagreement with DSUF ¶ 40 as required by Local Rule 56.1(b)(3), that fact is deemed admitted.

Indeed, a review of plaintiff's response to Defendants' L.R. 56.1 Statement of Undisputed Facts shows that each time plaintiff expressed disagreement with a particular fact, she failed to reference the record to establish the basis for the disagreement. As a result, as long as the facts set forth in Defendants' L.R. 56.1 Statement of Undisputed Facts are properly supported, those facts shall be deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3).

insurance coverage totaling $330,000 (*i.e.*, $110,000 in basic life insurance and $220,000 in supplemental life insurance). (Pl.'s Resp. DSUF at ¶ 44;[10] Jeanne Flaherty Aff. at ¶¶ 7-8, Defs.' App. Ex. F.) Although Unum billed Experio for Meltzer's premium based on basic and supplemental life insurance coverage totaling only $330,000, there is evidence suggesting that Experio was deducting money from Meltzer's paychecks for life insurance premiums based on Meltzer having $550,000 in total life insurance coverage: $110,000 in basic coverage and $440,000 in supplemental coverage. More specifically, according to Experio's Employee Benefits Summary regarding Meltzer: (1) effective January 1, 2001, Meltzer had $110,000 in basic life insurance coverage and $440,000 in supplemental life insurance coverage; and (2) Experio deducted nothing from Meltzer's paycheck to cover the premium for the basic life insurance coverage,[11] but deducted $39.38 per pay period for the premium for the $440,000 in supplemental life insurance coverage. (Admin. R. UACL00010; Pl.'s L.R. 56.1 Statement of Facts, Ex. F.)[12] It is unclear from the record whether Experio remitted premiums to Unum in excess of the amount Unum billed Experio.

On December 27, 2001, Meltzer died as a result of complications from surgery. (Defs.' Resp. PSUF ¶ 17.) Following his death, Meltzer-Marcus, as the beneficiary of her husband's life insurance coverage, submitted a claim for life insurance benefits under the Group Policy. (Pl.'s

---

[10]DSUF ¶ 44 is deemed admitted. *See* footnote 9.

[11]Experio paid the premium for the basic life insurance coverage.

[12]Unum contends that the document from Experio's records, plaintiff's exhibit F, is not part of the Administrative Record, and thus should not be considered. (Defs.' Resp. PSUF at ¶ 29.) But Unum is incorrect: document UACL0010 in the Administrative Record is substantively the same document as plaintiff's Exhibit F.

Resp. DSUF at ¶¶ 14-17; Defs.' Resp. PSUF at ¶ 8.) By letter dated February 7, 2002, Unum advised Meltzer-Marcus that as the beneficiary of the Group Policy, she was entitled to receive the amount of $333,336.16, which represented the $330,330 in life insurance proceeds payable under the Group Policy, plus interest. (Pl.'s Resp. DSUF at ¶ 18.) In accordance with the February 7, 2002 letter, Unum paid Meltzer-Marcus $333,336.16 under the Group Policy. (*Id.* at ¶ 19.) On March 12, 2002, Meltzer-Marcus, through her attorney, asked Unum to issue a check for an additional $220,000 (two times her late husband's annual salary), (*id.* at ¶ 21), based on the fact that in his Benefit Enrollment Form, Meltzer had "elected to purchase additional coverage equal to four times his annual salary for [total coverage, including basic coverage] of five times his annual salary." (Admin. R. at UACL00109.) On April 5, 2002, Meltzer-Marcus, through her attorney, notified Unum that she was appealing the amount of the claim approved by Unum in the amount of $333,336.16. (Pl.'s Resp. DSUF at ¶ 22.)

By letter dated April 16, 2002, Unum informed Meltzer-Marcus that it denied her request for an additional $220,000 in life insurance benefits under the Group Policy because evidence of insurability was not submitted to Unum for approval on the additional two-times-annual-salary benefit amount that her husband had elected on his 2000 enrollment form. (*Id.* at ¶ 23.) Accordingly, Unum explained, the $220,000 increase never became effective. (Admin. R. at UACL00174.) With the letter, Unum enclosed a copy of the Group Policy provisions that address the evidence of insurability requirement for any basic and supplemental insurance greater than three times annual earnings. (Pl.'s Resp. DSUF at ¶ 24.)

By letter dated May 31, 2002, Jeanne Flaherty, lead appeals specialist for Unum, advised Meltzer-Marcus' attorney that following a full and impartial review, she determined that the

initial claim was processed appropriately in accordance with the provisions of the Group Policy. (*Id.* at ¶ 25.) Flaherty explained that according to Unum's records, Meltzer did not submit evidence of insurability for approval by Unum for the amount of coverage over the three times annual earnings, as required under the policy. Therefore, the only coverage in force at the time of Meltzer's death was three times his annual earnings, or $330,000. (*Id.* at ¶ 26.) Flaherty further explained that Unum's records showed that the premium Unum billed to Experio for Meltzer's life insurance was based on three times annual earnings level of coverage. Accordingly, the level of coverage that Meltzer was eligible for under the terms of the policy was consistent with the amount of premium owed to Unum. (*Id.* at ¶ 27; Admin. R. at UACL000203.) Flaherty also explained that to ensure that the correct amount of premium was paid, Unum had previously advised its Customer Account Services to make any appropriate premium adjustment.[13] (Admin. R. at UACL000203.)

Meltzer-Marcus subsequently sued Unum to recover the additional $220,000 in life insurance benefits. The issue this court must resolve on the parties cross-motions for summary judgment is whether Meltzer-Marcus was entitled to additional life insurance benefits under the Group Policy.

---

[13]As noted earlier, it is not clear from the record whether Experio remitted premium payments to Unum for Meltzer's life insurance that exceeded the amount Unum billed to Experio. According to Unum, it is undisputed that Unum never received premiums for the additional $220,000 in supplemental coverage. That is not accurate. What is undisputed is that Unum billed Experio for $330,000 in coverage, not $550,000. (Pl.'s Resp. DSUF at ¶ 44.) It does not necessarily follow that Experio did not remit a higher premium payment to Unum for Meltzer's life insurance than the amount Unum billed. There is no evidence in the record indicating the amount of premium payments Unum received for Meltzer's coverage; the only evidence relates to the premium amount Unum billed to Experio.

## II.    DISCUSSION

To resolve the cross-motions for summary judgment, the following issues must be addressed: which standard of review applies to Unum's decision to deny Meltzer-Marcus' claim for additional benefits; whether Unum's decision was appropriate under the applicable standard of review; whether the doctrine of ERISA estoppel applies; and whether Meltzer-Marcus' claim for breach of fiduciary duty under § 1132(a)(3) is viable. These issues are addressed in turn.

### A.    Summary Judgment Standard and Applicable Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the movant sets forth its argument, properly supported by the record, that there is no genuine issue of material fact requiring trial, the burden shifts to the nonmovant to identify specific facts that preclude summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether the movant is entitled to summary judgment, the court examines the admissible evidence in the light most favorable to the nonmoving party, drawing any reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 504 (7th Cir. 1999) (court is "not required to draw every conceivable inference from the record [in favor of the non-movant]—only those inferences that are reasonable"). "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," there is no issue for trial. *Anderson*, 477 U.S. at 248.

Because the group policy at issue in this case is governed by ERISA, in order to rule on

9

the cross-motions for summary judgment, the court must determine whether Unum's decision is subject to *de novo* review or the more deferential arbitrary and capricious standard of review. According to the Supreme Court, the default standard of review for a denial of benefits challenged under § 1132(a)(1)(B) is *de novo* review, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the benefit plan contains clear language conferring discretionary authority to the plan administrator or fiduciary ("Authorized Decisionmaker") to interpret the plan terms or determine benefit eligibility, courts review denial of benefit claims under the arbitrary and capricious standard. *Carr v. Gates Health Plan*, 195 F.3d 292, 294 (7th Cir. 1999); *see Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331-333 (7th Cir. 2000) (language conferring discretionary authority must be clear). Under the arbitrary and capricious standard, if the Authorized Decisionmaker "makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, then the [Authorized Decisionmaker's] decision is final." *Carr*, 195 F.3d at 294 (internal quotation marks and citation omitted). It is not the court's function to decide whether it would reach the same conclusion regarding the claim for benefits. *Id.* Rather, the "decision will only be overturned if it is 'downright unreasonable.'" *Id.* (citation omitted).

Here, the Group Policy clearly conferred discretionary authority to Unum. The Group Policy expressly states: "When making a benefit determination under the Summary of Benefits, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits." (Pl.'s Resp. DSUF at ¶ 7.) Given the clear

and unambiguous language of the Group Policy, the court shall apply the arbitrary and capricious standard of review in assessing Unum's decision to deny Meltzer-Marcus' claim for additional life insurance benefits.[14] Furthermore, because the deferential standard of review applies, the court's review is limited to the evidence that was submitted in support of the application for benefits, *i.e.*, the information in the administrative record. *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981-982 (7th Cir. 1999). Accordingly, in ruling on the cross-motions for summary judgment, the court's task is determine, based on the administrative record, whether Unum's decision denying Meltzer-Marcus' claim for an additional $220,000 in life insurance benefits was arbitrary and capricious.

## B.     Unum's Decision Denying the Claim for Additional Benefits was Not Arbitrary & Capricious

Meltzer-Marcus sued Unum under § 1132(a)(1)(B) of ERISA to recover an additional $220,000 in life insurance benefits she claims she is entitled to under her husband's life insurance policy. Applying the arbitrary and capricious standard, as long as Unum's decision to deny Meltzer-Marcus' claim for additional life insurance benefits was based on a reasonable interpretation of the plan documents, that decision must be upheld. *Carr*, 195 F.3d at 294. For the reasons that follow, the court finds that Unum's decision was not arbitrary and capricious, and thus grants summary judgment in favor of Unum and against Meltzer-Marcus on her § 1132(a)(1)(B) claim.

---

[14]Notably, in opposing Unum's motion for summary judgment and seeking summary judgment in her favor, Meltzer-Marcus raised no argument that the *de novo* standard should apply.

## *1.* *Unum's Decision was Based on a Reasonable Interpretation of the Group Policy*

Unum's decision to deny the additional benefits was based on a reasonable interpretation

of the provisions of the Group Policy. Under the Group Policy, as relevant here, evidence of

insurability is required for the amount of life insurance coverage (basic and supplemental

combined) that exceeds three times the employee's annual earnings.[15] Additionally, the Group

Policy provides that coverage that is subject to the evidence of insurability requirement does not

become effective until Unum approves the required evidence of insurability. (Pl.'s Resp. DSUF

at ¶¶ 29-33; Admin. R. at UACL00147.) Although Meltzer indicated on his Benefit Enrollment

Form that he wanted $550,000 total life insurance coverage ($440,000 supplemental insurance,

on top of the $110,000 basic coverage provided by Experio), he never submitted evidence of

insurability. As a result, when Meltzer-Marcus filed the claim for benefits after her husband's

death, Unum determined that the amount of life insurance coverage (basic and supplemental

combined) payable under the Group Policy was three times Meltzer's annual salary

($330,000)—the maximum amount of life insurance coverage available to Meltzer without

evidence of insurability. In other words, Unum determined that because Meltzer failed to submit

evidence of insurability, his request for an additional $220,000 in life insurance coverage never

became effective. (Jeanne Flaherty Aff. at ¶ 7, Defs.'s App. Ex. F; Admin. R. at UACL000174.)

Unum's decision was based on a reasonable interpretation of the provisions of the Group Policy

---

[15]Under the Group Policy, evidence of insurability is required for the amount of the employee's basic and additional benefits over $500,000 or over three times annual earnings. (Pl.'s Resp. DSUF at ¶ 30.) The relevant level of coverage for Meltzer is three times annual earnings. Accordingly, for ease of discussion, for the remainder of the opinion, the court shall discuss only the three-times-annual- earnings level of coverage, not the $500,000 level.

regarding the evidence of insurability requirement, and thus must be upheld. *See Carr*, 195 F.3d at 294 (decision based on reasonable interpretation of policy must be upheld); *Hedeen v. Aon Corp.*, No. 04 C 3360, 2004 WL 2434230, at *3 (N.D. Ill. Oct. 28, 2004) (granting motion to dismiss claim for long-term disability benefits because plaintiff failed to submit evidence of insurability, which was a condition precedent for coverage).

### 2. *Meltzer-Marcus' Arguments to the Contrary Are Not Persuasive.*

Meltzer-Marcus' arguments to the contrary do not persuade the court to rule otherwise. According to Meltzer-Marcus, the relevant issue is not whether Meltzer submitted evidence of insurability, but rather, what the parties' reasonable expectations were relating to the Group Policy. Citing *Mays v. Unum Life Insurance Co.*, No. 95 C 1168, 1995 WL 631807, at *6 (N.D. Ill. Oct. 24, 1995), Meltzer-Marcus argues that the Group Policy must be interpreted in an ordinary manner as a person of average intelligence and experience would interpret the plan. Based on this premise, Meltzer-Marcus argues that her husband reasonably expected, as any person of average intelligence and experience would, that he had the additional $220,000 life insurance coverage because he followed all of the prescribed steps in the documents, filled out the paperwork that was provided to him, and paid raised premiums up until the time of his death. This argument misses the mark for several reasons.

First, Meltzer-Marcus' argument is factually inaccurate. Meltzer did not follow "all of the prescribed steps"—the Group Policy expressly required evidence of insurability, which Meltzer never provided. Second, whether Meltzer-Marcus paid premiums based on coverage totaling $550,000 is not dispositive. For one thing, it is undisputed that the premium that Unum billed Experio for Meltzer's life insurance was based on basic and supplemental insurance

13

coverage totaling $330,000, not $550,000. (Pl.'s Resp. DSUF at ¶ 44; Jeanne Flaherty Aff. at ¶¶ 7-8, Defs.' App. Ex. F.) If Experio overlooked the bills and submitted premiums based on $550,000 worth of coverage, that was an error on Experio's part. In any event, the Group Policy states that coverage subject to the evidence of insurability requirement is not effective until Unum approves the evidence of insurability. Even if Meltzer paid and Unum received premiums based on $550,000 worth of coverage (which Meltzer has not established),[16] payment of premiums does not override the Group Policy's requirements that evidence of insurability must be submitted to and approved by Unum before coverage in excess of three times annual salary becomes effective.

Third, Meltzer-Marcus' reliance on what a person of average intelligence and experience would expect is misplaced. Although it is true, as a general matter, that the terms of an ERISA plan are interpreted "in an ordinary and popular sense as would a person of average intelligence and experience," *Kamler v. H/N Telecomm. Serv. Inc.*, 305 F.3d 672, 680 (7th Cir. 2002), this standard is a federal common law standard of contract interpretation applicable to determining whether a provision in a given ERISA plan is ambiguous. *Id.* Meltzer-Marcus does not identify any provision from the Group Policy that she believes is ambiguous, however. It is therefore unclear why the federal common law standard of contract interpretation is relevant. Instead of challenging a particular provision, Meltzer-Marcus contends that the Group Policy "is not clear on the responsibilities of the employee [Meltzer] or Unum as to obtaining the [evidence of insurability][,]" and argues, based on certain evidence outside the administrative record, that her

---

[16]As noted earlier, there is no evidence in the record indicating the amount of premium payments Unum received for Meltzer's coverage; the only evidence relates to the premium amount Unum billed to Experio.

14

husband reasonably expected that Unum would provide the evidence of insurability form if the form were necessary.[17] (Pl.'s Resp. & Cross Motion Summ. J. at 5.)[18] Because Unum did not send her husband an evidence of insurability form, Meltzer-Marcus urges, it was reasonable for him to conclude that he did not need to submit evidence of insurability in order to be covered for the additional $220,000. (*Id.*) But in arguing that the Group Policy lacks clarity (without challenging any particular policy provision), Meltzer-Marcus disregards the plain language of the Group Policy, which states that (1) evidence of insurability is required for any life insurance coverage exceeding three times annual salary, (2) any coverage exceeding three times annual salary is not effective until Unum approves the submitted evidence of insurability, and (3) an employee may obtain an evidence of insurability form from his employer.[19] (Pl.'s Resp. DSUF at ¶¶ 29-33; Admin. R. at UACL000147.) The court thus finds this argument unpersuasive.

Fourth, the decision in *Mays* on which Meltzer-Marcus relies does not support her position. In *Mays*, the ERISA plan at issue allowed an employee to increase his life insurance

---

[17]Based on facts that are outside the administrative record, Meltzer-Marcus claims that on several occasions, Experio confirmed that her husband had $550,000 in life insurance coverage. Because the arbitrary and capricious standard of review applies, the court's assessment of Unum's decision is limited to the evidence available in the administrative record. *Perlman*, 195 F.3d at 981-982. However, to the limited extent necessary, those facts are discussed in the section regarding ERISA estoppel.

[18]*See* docket entry 68.

[19]Meltzer-Marcus claims that the reasonableness of her husband's expectations is supported by the fact that Unum did not deny coverage until after her husband's death. Even if the reasonableness of her husband's expectations was the relevant issue (which it is not), the court fails to see how the fact that Unum did not deny coverage until after Meltzer's death supports Meltzer-Marcus' claim. It is undisputed that while Meltzer was still living, neither Meltzer nor his wife ever contacted Unum regarding his life insurance benefits. (Pl.'s Resp. DSUF at ¶¶ 46-47, 52.) Moreover, Meltzer knew evidence of insurability was required, and the Group Policy clearly states that coverage exceeding three times annual salary is not effective until Unum approves evidence of insurability. Given those facts, it was not reasonable for Meltzer to believe coverage was in effect when he knew that he never submitted the required evidence of insurability.

15

coverage "any number of levels with evidence of insurability satisfactory to the Insurance Company." 1995 WL 631807, at *6. The policy further provided that an employee could increase his life insurance coverage by one level without submitting evidence of insurability. *Id.* Because the insured employee had failed to submit evidence of insurability when she elected a two-level increase in coverage, the plaintiff—the beneficiary under the policy—argued that the employee's obligation to present evidence of insurability was not triggered until the insurance company (which was Unum) requested information, and that if the employee did not receive a form from the insurance company to complete, then no evidence of insurability was required. *Id.* The court disagreed, concluding that under the group policy at issue, evidence of insurability was required to receive an increase of two levels of insurance coverage. *Id.* More specifically, the court found that "the group policy's language cannot be read to suggest that Unum may be satisfied with no evidence of insurability when an employee attempts to increase her coverage by more than one level." *Id.* Despite Meltzer-Marcus' suggestion to the contrary, *Mays* does not stand for the proposition that where an ERISA plan requires evidence of insurability, an employee may be excused from the requirement if the insurance company does not contact the employee to request such evidence.[20] Indeed, the *Mays* court found that where evidence of

---

[20]Although the plaintiff in *Mays* was awarded the $50,000 coverage she sought on summary judgment, the award was based on different grounds and was the result of the unique facts of the case which are not applicable here. For 1991, the insured had elected $20,000 coverage. *Mays*, 1995 WL 631807, at * 2. For 1992, she elected $50,000 in coverage, which was an increase in two levels, but failed to submit evidence of insurability; she could have selected $30,000, a one level increase, without submitting evidence of insurability. *Id.* For 1993, the insured again elected $50,000 coverage, but did not submit evidence of insurability. *Id.* at *3. The court found that because the insured failed to submit evidence of insurability for 1992, her level of coverage for 1992 defaulted to $30,000—a one level increase from her previous election, and the highest increase she could have without submitting evidence of insurability. *Id.* at *8. Based on that finding, her increase to $50,000 for 1993 was also only a one-level increase, from $30,000 to $50,000, and thus required no evidence of insurability. *Id.* Accordingly, the court concluded that the plaintiff, as the insured's beneficiary, was entitled to $50,000 in life

16

insurability is required for an increase in coverage, an employee who fails to submit evidence of insurability is not entitled to the requested increase. *Id.* at \*6. The court further stated that even if Unum usually mailed forms to employees to facilitate presentation of evidence of insurability, "Unum's failure to mail an employee a form should not affect the employee's requirement to present insurability evidence." Moreover, although under *Mays*, the employee may be entitled, as a default, to the highest increase available without submitting evidence of insurability, *see id.* at \* 8, that aspect of *Mays* does not help Meltzer-Marcus—when her husband failed to submit evidence of insurability, Unum defaulted him the highest level of life insurance coverage available to him without submitting evidence of insurability.

Despite Meltzer-Marcus' opinion to the contrary, whether her husband submitted the required evidence of insurability was the dispositive issue for her claim for the additional \$220,000 under the Group Policy. Because Meltzer failed to submit evidence of insurability, Unum denied Meltzer-Marcus' claim for the additional \$220,000 insurance coverage. This decision was based on a reasonable interpretation of the Group Policy and its requirements regarding evidence of insurability. Unum "ma[de] an informed judgment and articulate[d] an explanation for it that is satisfactory in light of the relevant facts," so Unum's decision must be upheld. *Carr*, 195 F.3d at 294.

---

insurance benefits. *Id.*

    This holding does not help Meltzer-Marcus. Unlike Mays' one-level increase for 1993, Meltzer's request for an additional \$220,000 required evidence of insurability (as well as Unum's approval of evidence of insurability before the additional coverage became effective). Because Meltzer failed to submit evidence of insurability, Unum determined that he had \$330,000 in total life insurance coverage, the maximum amount of life insurance coverage that was available to him without submitting evidence of insurability.

### 3. ERISA Estoppel

There is one other issue the court must address regarding Unum's decision to deny

Meltzer-Marcus' claim under § 1132(a)(1)(B) for the additional $220,000: whether the doctrine

of ERISA estoppel applies. In her response to Unum's motion for summary judgment and cross-

motion for summary judgment, Meltzer-Marcus argues that her husband had a reasonable

expectation that he had the additional $220,000 life insurance coverage. In making this

argument, Meltzer-Marcus is essentially arguing that her husband should be excused from his

failure to comply with the evidence of insurability requirement. Although Meltzer-Marcus did

not frame her argument as invoking the doctrine of ERISA estoppel, Unum replies that she is

effectively seeking to estop Unum from enforcing the terms of the Group Policy. According to

Unum, Meltzer-Marcus cannot sustain a claim against Unum for benefits based on ERISA

estoppel because the doctrine is inapplicable. In her reply brief, Meltzer-Marcus disagrees,

arguing that ERISA estoppel does apply. But, as explained below, she is incorrect.

In the Seventh Circuit, a cause of action for estoppel in the ERISA context has four

elements: "a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that

misrepresentation by the plaintiff; (4) to her detriment." *Coker v. Trans World Airlines*, 165 F.3d

579, 585 (7th Cir. 1999). Not every false statement reasonably and detrimentally relied upon by a

plaintiff gives rise to an estoppel claim, however. *Id.* "Arguments that negligent

misrepresentations 'estop' sponsors or administrators from enforcing the plans' written terms

have been singularly unsuccessful." *Id.* at 586 (citation omitted).

Putting aside the fact that Meltzer-Marcus did not raise an estoppel claim in her

complaint, she cannot satisfy the elements of estoppel. According to Meltzer-Marcus, her

18

husband had a reasonable expectation that he had life insurance coverage worth $550,000 because he confirmed his life insurance coverage with Experio on several occasions after his enrollment and prior to his death. The facts underlying this contention, which are based on evidence outside the administrative record, include (1) Meltzer-Marcus' deposition testimony in which she testified that her husband confirmed his coverage Experio on numerous occasions, (e.g., Pl.'s L.R. 56.1 Statement Ex. G at 35:19-36:18, 37:12-41:6); and (2) deposition testimony from Sabrina Jeffries, a woman who worked as a benefits manager for Experio for a few months, who testified that based on her best recollection, the insurance company was responsible for sending evidence of insurability forms to applicants, ( id., Ex. J at 40:21-41:11). There is no evidence of any written statement (let alone an intentional misrepresentation) from Unum to Meltzer excusing him from complying with the evidence of insurability requirement. Indeed, it is undisputed that Meltzer never contacted Unum regarding his life insurance coverage, he only contacted Experio. (Pl.'s Resp. DSUF at ¶¶ 46-47, 51.) Experio is not Unum's agent under the Group Policy, (id. at ¶ 45; Admin. R. at UACL000141), and Meltzer-Marcus offers no reason why statements by Experio should be attributable to Unum for purposes of estoppel.[21] *See Gallegos v. Mt. Sinai Med. Center*, 210 F.3d 803, 809 (7th Cir. 2000) (basic policy consideration underlying estoppel is that "a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract"). Rather than arguing that Experio should be deemed Unum's agent, Meltzer-Marcus contends that Experio's representations to Meltzer were based on information provided by Unum. But nothing

---

[21] The court need not decide whether Experio made any knowing misrepresentations to Meltzer regarding his life insurance coverage.

in the cited deposition testimony suggests that Unum told Experio that Meltzer was approved for $550,000 in coverage or that Unum was waiving the required evidence of insurability, let alone that Unum made such a representation in writing to anyone. This argument gets Meltzer-Marcus nowhere.

Further, following the Seventh Circuit's decision in *Kamler, supra*, the court concludes that Meltzer-Marcus cannot establish reasonable reliance. In *Kamler*, the plan documents specified that eligible employees had to apply for medical, life and disability insurance coverage by submitting an enrollment form, and that coverage would be effective only upon the insurer's approval of the enrollment form. 305 F.2d at 675-676. The plaintiff never completed the enrollment process, *id.* at 676, and thus failed to satisfy a condition precedent for coverage. As a result, when he submitted a claim for medical benefits, the insurer denied the claim. The plaintiff later sued based on theories of estoppel, arguing that he should be excused from the enrollment requirement based on representations made by his employer assuring him that he was covered. The Seventh Circuit rejected his estoppel arguments, finding that the plaintiff could not establish reasonable reliance. *Id.* at 680. Specifically, the court held that "it was unreasonable for Kamler to interpret the alleged misrepresentations as excusing him from enrolling in the [p]lan because the . . . [p]lan documents unambiguously and clearly require enrollment as a condition precedent for coverage." *Id.*

Just as the ERISA plan in *Kamler* required enrollment as a prerequisite for coverage, the Group Policy required evidence of insurability for any life insurance coverage exceeding three times annual salary. Given that clear and unambiguous written requirement, it would be unreasonable for Meltzer-Marcus or her husband to interpret any representations that Experio

20

made regarding Meltzer's coverage as excusing the required evidence of insurability. Accordingly, Meltzer-Marcus cannot satisfy the reasonable reliance requirement.

Because Meltzer-Marcus has no viable claim for benefits under ERISA based on estoppel, and because Unum's decision denying Meltzer-Marcus' claim for an additional $220,000 was based on a reasonable interpretation of the Group Policy and its requirements regarding evidence of insurability, the court concludes that Unum's decision was not arbitrary or capricious.[22] Summary judgment is granted in favor of Unum and against Meltzer-Marcus on her claim under § 1132(a)(1)(B).[23]

## C.   Breach of Fiduciary Duty Claim

The final issue is whether Meltzer-Marcus' claim for breach of fiduciary duty under § 1132(a)(3) is viable as an alternative claim. It is not.

In *Varity Corporation v. Howe*, 516 U.S. 489, 515 (1996), the Supreme Court explained that § 1132(a)(3) is a catchall provision, which acts as "a safety net, offering appropriate

---

[22]To the extent Meltzer-Marcus argues that Unum failed to give requisite notice regarding cancellation or modification of benefits, this argument is misplaced. Unum did not cancel or modify Meltzer's benefits—coverage for the additional $220,000 in life insurance benefits never went into effect because Meltzer failed to submit evidence of insurability. Similarly, Meltzer-Marcus' perfunctory contention that Unum never notified Meltzer that it had not received evidence of insurability is irrelevant: Meltzer knew he did not submit evidence of insurability. Furthermore, there is no requirement in the Group Policy that Unum should provide such notice. Finally, according to Meltzer-Marcus, Unum claims it only collected premiums from Meltzer based on coverage at the one times annual salary level, yet Unum paid benefits at the three times annual salary level. Meltzer-Marcus proceeds to formulate an argument based on this purported inconsistency, but Meltzer-Marcus has the facts wrong—Unum never claimed it collected premiums for the lowest level of coverage. It is undisputed that Unum billed Experio for coverage based on coverage for three times annual salary. (Pl.'s Resp. DSUF at ¶ 44.) Because there is no inconsistency, the argument based on the purported inconsistency is inherently flawed.

[23]In its surreply, Unum also argues that it is entitled to summary judgment because Meltzer-Marcus released and waived her right to assert her § 1132(a)(1)(B) claim when she settled with Hitachi Consulting and executed a Release and Settlement Agreement. Because the court has ruled that Unum is entitled to summary judgment against Meltzer-Marcus, the court finds no need to address this argument.

21

equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." Since that ruling, federal appellate courts have consistently held that when a plaintiff has the right to seek relief under § 1132(a)(1)(B), dismissal of the plaintiff's claim under § 1132(a)(3) is appropriate. *See, e.g., Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 454 (6th Cir. 2003) (affirming district court's dismissal of breach of fiduciary duty claim where § 1132(a)(1)(3) provided remedy for alleged injury); *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1088 (11th Cir. 1999) (ERISA plaintiff who can proceed under § 1132(a)(1)(B) cannot bring alternative claim under § 1132(a)(3)); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (§ 1132(a)(3) claim not available where plaintiff has recourse under § 1132(a)(1)); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997) (affirming summary judgment against plaintiff on § 1132(a)(3) claim for breach of fiduciary duty; equitable relief under § 1132(a)(3) not appropriate where § 1132(a)(1) provides adequate remedy); *Wald v. S.W. Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1005-1006 (8th Cir. 1996) (affirming decision denying leave to amend complaint, finding § 1132(a)(3) claim duplicative of § 1132(a)(1) claim). Although the Seventh Circuit has not directly addressed the issue, numerous courts in this district have reached the same conclusion. *See, e.g., Erikson v. Ungaretti & Harris Exclusive Provider Plan*, 03 C 5466, 2003 WL 22836462, at *2-4 (N.D. Ill. Nov. 23, 2003) (dismissing § 1132(a)(3) claim as duplicative); *Clark v. Hewitt Assoc., LLC*, 294 F. Supp. 2d 946, 949-950 (N.D. Ill. 2003) (dismissing § 1132(a)(3) claim where plaintiff had the right to bring a claim under § 1132(a)(1)(B)); *Jurgovan v. ITI Enter.*, No. 03 C 4627, 2004 WL 1427115, at *2 (N.D. Ill. June 23, 2004) (same); *Schluter v. Principal Life Ins. Co.*, No. 00 C 2526, 2001 WL 476589, at *4 (N.D. Ill. May 2, 2001) (equitable relief under § 1132(a)(3) not appropriate where plaintiff has

right to bring claim for denial of benefits under § 1132(a)(1)(B)). Significantly, the fact that the plaintiff does not prevail on his § 1132(a)(1) claim does not make a claim under § 1132(a)(3) a viable alternative. *Katz*, 197 F.3d at 1088; *Tolson*, 141 F.3d at 610; *Clark*, 294 F. Supp. 2d at 950.

Following the reasoning of *Varity* and its progeny, the court thus grants summary judgment in favor of Unum and against Meltzer-Marcus on her claim for equitable relief under § 1132(a)(3).

## III.    CONCLUSION

For the reasons explained above, the court grants Unum's motion for summary judgment against Meltzer-Marcus and denies Meltzer-Marcus' cross-motion for summary judgment against Unum. The clerk is therefore directed to enter judgment in favor of Unum and against Meltzer-Marcus on the claims raised in Counts III and IV of the Complaint. Unum's request for attorney's fees under 28 U.S.C. § 1132(g)(1), which was raised in its surreply brief, is denied without prejudice. This matter is set for status on Tuesday, October 18, 2005 at 2:30 p.m.

ENTERED:

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge

Dated: September 30, 2005

23